FILED

2009 May-14  PM 04:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| SCOTT PATTILLO, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-08-S-2147-NE |
| | ) | |
| CITY OF CULLMAN, ALABAMA, | ) | |
| *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Plaintiff, Scott Pattillo, filed an amended complaint on April 3, 2009, asserting claims for retaliation under the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 701 *et seq.*, and the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 *et seq.*, against the following defendants: (1) the City of Cullman, Alabama; (2) the City of Cullman Police Department; (3) Kenny Culpepper, the City of Cullman Police Chief; and (4) Gordon Sandlin, the City of Cullman Assistant Police Chief.[1]  The case currently is before the court on defendants' motion to dismiss plaintiff's amended complaint.[2]  Upon consideration of the motion, the amended complaint, and the parties' briefs, the court concludes the motion should be granted in part and denied in part.

---

[1]*See* doc. no. 22 (Amended Complaint).

[2]Doc. no. 26.

# I. STANDARD OF REVIEW

The Federal Rules of Civil Procedure require only that a complaint contain a "'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 563 (2007) (citations omitted). These factual allegations need not be detailed, but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citing *Papasan v. Allain,* 478 U.S. 256, 286 (1986), and *Sanjuan v. American Bd. of Psychiatry and Neruology, Inc.,* 40 F.3d 247, 251 (7th Cir. 1994)) (bracketed alteration in *Twombly*). Thus, although notice pleading may not require that the pleader allege a "specific fact" to cover every element, or allege "with precision" each element of a claim, the complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001).

When ruling upon a Rule 12(b)(6) motion, the court must accept all well-

pleaded facts as true, and construe them in the light most favorable to the non-moving party.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also, e.g., Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364, 1369 (11th Cir. 1997); *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983).  Viewed in this manner, the factual allegations of the complaint "must be enough to raise a right to relief above the speculative level . . . ."  *Twombly,* 550 U.S. at 555 (citations omitted).  Stated differently, the plaintiff must plead facts sufficient to "nudge[] her claims across the line from conceivable to plausible . . . ."  *Id.* at 570.

## II. ALLEGATIONS OF PLAINTIFF'S AMENDED COMPLAINT

Plaintiff, Scott Pattillo, is employed as a police officer for the City of Cullman, Alabama.[3]  Plaintiff suffers from two medical conditions:  pseudofolliculitis barbae and angular cheilitis.[4]  In July of 2007, plaintiff informed defendant Gordon Sandlin, the Assistant Police Chief for the City of Cullman, of these conditions, and that the

---

[3]Amended Complaint, at ¶ 7.

[4]*Id.* at ¶ 11.  One medical dictionary defines pseudofolliculitis as "a bacterial disorder, usually caused by *Staphylococcus aureus,* occurring chiefly in the beards of men of African descent, especially in the submandibular region of the neck.  The characteristic lesions are erythematous papules, sometimes pustules, containing buried hairs whose tips can easily be freed up; in contrast to sycosis barbae, which is most often seen in bearded men, pseudofolliculitis affects exclusively those who shave."  *Dorland's Illustrated Medical Dictionary* 1533 (30th ed. 2003).  Angular cheilitis, otherwise referred to as "perleche," consists of "single or multiple fissures at the corners of the mouth, which may be unilateral or bilateral and may spread to the lips and cheeks."  *Id.* at 1408.

course of treatment recommended by his physician was to quit shaving portions of his face.[5]  Plaintiff also presented Sandlin with a letter from Dr. David Kim, a dentist, explaining his medical conditions.[6]  After reading Dr. Kim's letter, Sandlin informed both plaintiff and Dr. Kim that, if plaintiff could not clean-shave his face, he could no longer work as a uniformed police officer with the City of Cullman.[7]  In November of 2007, Dr. Steve Skinner sent a letter to the City of Cullman Police Department, stating that plaintiff suffered from pseudofolliculitis barbae, and that plaintiff should be allowed to maintain a well-groomed beard year-round.[8]

On July 12, 2007, plaintiff met with Sandlin and Kenny Culpepper, the Chief of Police, to request accommodation for his medical conditions.  During the meeting, Sandlin informed plaintiff that he would never be promoted as long as he had facial hair.[9]  The next day, plaintiff met privately with Chief Culpepper, who asked plaintiff not to repeat Sandlin's comment about plaintiff not getting promoted.[10]

After plaintiff's meeting with Culpepper and Sandlin, plaintiff was reassigned to "a non-uniform position of guarding inmates on work details at the city dump," a

---

[5]Amended Complaint, at ¶¶ 12-13.

[6]*Id.* at ¶ 13.

[7]*Id.* at ¶¶ 14-15.

[8]*Id.* at ¶ 16.

[9]*Id.* at ¶ 18.

[10]Amended Complaint, at ¶ 19.

position that plaintiff alleges would adversely impact his ability for advancement within the Police Department.[11]   At the time they decided to reassign plaintiff, Culpepper and Sandlin had knowledge of plaintiff's complaints of disability discrimination.[12]  Plaintiff also alleges that Sandlin, Culpepper, the City of Cullman, and the City of Cullman Police Department took the following actions in retaliation for plaintiff's complaints of disability discrimination:

> A.) After Plaintiff filed his complaint of discrimination the Cullman City Police Department began investigating Plaintiff's actions and communications between himself, other Cullman City Police Officers and third parties by running checks on Plaintiff's cell phone use to determine whom he has been communicating with.  Police Chief Culpepper stated that after the complaint was filed they were going to look at all phone calls made from [C]ity of Cullman issued phones.

> B.) Took action to publish in the Cullman Safety issue that Plaintiff's conduct in his self inflicted wound was his fault and preventable.

> C.) Denied Plaintiff's Workers Compensation Claim for the gun shot wound received while on duty.

> D.) Plaintiff would not be promoted.

> E.) Plaintiff reassigned to a dead end position that seriously adversely affect[ed] his advancement opportunity.

> F.) Plaintiff denied promotion to the position for Sex Crimes Investigator after retirement of Frances Styles in January 2008.

---

[11]*Id.* at ¶¶ 21-22.

[12]*Id.* at ¶ 23.

. . . .

       G.) Plaintiff removed from position of Range Master.

       H.) Plaintiff lost use of his office.

       I.) Plaintiff lost use of his Police Department issued vehicle by order of Chief Culpepper.

       J.) Plaintiff was placed in a position with no responsibilities or duties.

       K.) Plaintiff's job is to sit at the Gun Range at the old city dump and do nothing.

       L.) Defendants have continued to single out the Plaintiff demanding that Plaintiff take a polygraph test in situations other officers have not [been] required to do and treatment only occurred after the filing of EEOC charge 420-2009-00859.

       M.) Defendants have continued to single out the Plaintiff demanding that Plaintiff stand for photographs being taken in full uniform and investigating him for improper uniforms when other officers are not going through this type of treatment and the Plaintiff has been wearing this same type of approved uniform for the past seven (7) years.  This action against the Plaintiff was taken after the filing of the EEOC charge 420-2009-00850.[13]

Plaintiff also alleges that defendants "received federal funding for various programs, training, equipment and services which have directly benefitted" him.[14]
The funding originated from agencies like the United States Department of Justice,

---

[13]*Id.* at ¶ 24(A)-(M).

[14]*Id.* at ¶ 25.

the United States Attorney's Office, and the Emergency Management Institute. Defendants allocated the federal funding to the Police Department's "general fund" and used it for "salaries, equipment upgrades[, and] training seminars for police officers to include the Plaintiff."[15]

Based upon these factual allegations, plaintiff asserts two causes of action: *i.e.,* for retaliation under the Rehabilitation Act, and for retaliation under the ADA.  He claims that defendants retaliated against him for complaining about and opposing their failure to accommodate his disability.[16]  As a remedy for these violations, plaintiff requests the court to enter a judgment:

> A.  Declaring that the acts and practices complained of herein are in violation of the Americans with Disability [sic] Act and Rehabilitation Act.

> B.  Enjoining and permanently restraining these violations of the Americans with Disability [sic] Act and the Rehabilitation Act.

> C.  Directing Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff's employment opportunities.

> D.  Directing Defendant to make Plaintiff whole for all earnings he would have received but for Defendants' discriminatory and retaliatory treatment, including, but not limited to all lost benefits, seniority, back pay, front pay, promotions, punitive damages and reinstatement of job were [sic] applicable by law.

---

[15]Amended Complaint, at ¶ 25.

[16]*Id.* at ¶¶ 27-36.

E.  Awarding Plaintiff compensatory damages.

F.  Award[ing] Plaintiff emotional damages for violations of §
504 of the Rehabilitation Act.

G.  Award[ing] Plaintiff the cost of this action together with
attorney's fees and cost[s], as provided by 42 U.S.C. §12205 and 29
U.S.C. § 794.

H. Award[ing] such relief as this Court deems just and proper.[17]

## III. DISCUSSION

A.    **Timeliness, Leave of Court, and Relation Back**

Defendants first object to plaintiff's amended complaint on the ground that it

is untimely and was filed without leave of court.[18]  Federal Rule of Civil Procedure

15(a) provides that "[a] party may amend its pleading once as a matter of course . .

. before being served with a responsive pleading."  Fed. R. Civ. P. 15(a).  Defendants

never filed an answer to plaintiff's original complaint; instead, they filed only a

motion to dismiss the complaint.[19]  A motion to dismiss is not a "responsive pleading"

under the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 7(a) ("Only these

pleadings are allowed: (1) a complaint; (2) an answer to a complaint; (3) an answer

to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a

---

[17]*Id.* at 13-15 (Prayer for Relief).

[18]*See* doc. no. 25 (Objection to Amended Complaint).

[19]*See* doc. no. 10.

third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer."). Accordingly, plaintiff was not required to seek leave of court before filing his amended complaint. Furthermore, plaintiff filed the amended complaint within the Scheduling Order deadline for amending pleadings.[20]

Defendants also argue that the date of filing of plaintiff's amended complaint should not "relate back" to the date of filing of his original complaint, because the allegations of the amended complaint do not "ar[i]se out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The court disagrees, and concludes that the allegations of plaintiff's amended complaint do arise out of the same conduct, transaction, or occurrence set out in plaintiff's original complaint. Thus, the date of filing of plaintiff's amended complaint will relate back to the date of filing of plaintiff's original complaint.

## B.    Failure to State a *Prima Facie* Case for Retaliation

Defendants next argue that plaintiff's amended complaint does not contain sufficient allegations to support a *prima facie* case of retaliation under either the Rehabilitation Act or the ADA.[21] However, the Supreme Court has held that the

---

[20]*See* doc. no. 20 (Scheduling Order), at ¶ 1 ("No causes of action, defenses, or parties may be added after April 3, 2009. The provisions of Fed. R. Civ. P. 15(a) apply."); doc. no. 22 (Amended Complaint) (filed on April 3, 2009).

[21]"Discrimination claims under the Rehabilitation Act are governed by the same standards

elements of a *McDonnell Douglas prima facie* case are "an evidentiary standard" for evaluating the sufficiency of a plaintiff's circumstantial proof of discrimination, "not a pleading requirement." *Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002). *See also id.* at 512 ("Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases."). In other words, Federal Rule of Civil Procedure 8(a) requires only a short and plain statement of the plaintiff's claim, sufficient to give the defendants fair notice of what the plaintiff's claim is, and, the grounds upon which it rests, and it does not require the plaintiff to plead a *prima facie* case of discrimination in order to survive the defendants' motion to dismiss. Upon review of plaintiff's amended complaint, the court concludes that it contains sufficient allegations to support a claim for retaliation under both the Rehabilitation Act and the ADA, and to give defendants fair notice of the grounds supporting those claims. Accordingly, plaintiff's retaliation

---

used in ADA cases. . . ." *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000) (citing 29 U.S.C. § 794(d)) (footnote omitted); *see also Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1526 n.2 (11th Cir. 1997). Thus, "[c]ases decided under the Rehabilitation Act are precedent for cases under the ADA, and *vice versa*." *Cash*, 231 F.3d at 1305 n.2 (citing *Pritchard v. Southern Company Services*, 92 F.3d 1130, 1132 n.2 (11th Cir. 1996)). To establish a *prima facie* case of retaliation under either of those statutes, plaintiff must show: (1) that he engaged or participated in statutorily protected expression or activity; (2) that he subsequently suffered an adverse employment action; and (3) that there is a causal linkage between the protected expression or activity and the adverse action. *See Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1260-61 (11th Cir. 2001) (citing *Farley v. Nationwide Mutual Insurance Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999)); *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997) (citing *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993) (explaining prima facie elements of Title VII retaliation claim)).

claims will not be dismissed due to plaintiff's failure to state a *prima facie* case of retaliation.[22]

## C.      Failure to Allege Federal Funding

Next, defendants argue that plaintiff's Rehabilitation Act claim should fail because plaintiff did not adequately allege that defendants received federal funding for any program or activity from which plaintiff was excluded.  *See* 29 U.S.C. § 794(a) ("No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .").  *See also Doyle v. University of Alabama in Birmingham,* 680 F.2d 1323, 1326-27 (11th Cir. 1982) ("'A private plaintiff in a section 504 case must show that the program or activity with which he or she was involved, or from which he or she was excluded, itself received or was directly benefitted by federal financial assistance.'") (quoting *Brown v. Sibley,* 650 F.2d 760, 769 (5th Cir. July 16, 1981))[23] (footnotes omitted).  Plaintiff's amended complaint states:

---

[22]The court will revisit plaintiff's ability to support a *prima facie* case at the summary judgment stage.

[23]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Defendants received federal funding for various programs, training, equipment and services which have directly benefitted the Plaintiff and Plaintiff has participated in.  The Defendants have received federal funding allocated to the general fund of the Defendants and at times utilized for salaries, equipment upgrades[, and] training seminars for police officers to include the Plaintiff funded by but not inclusive of the United States Department of Justice, United States Attorney's Office and Emergency Management Institute (FEMA).[24]

These allegations are sufficient to indicate that defendants received federal funding for a program from which plaintiff was excluded, or of which he was denied the benefits.  Consequently, plaintiff's claim for retaliation under the Rehabilitation Act will not be dismissed for failure to adequately allege defendants' receipt of federal funding.

**D.   Official Capacity Claims Against Culpepper and Sandlin**

Defendants also argue that plaintiff's claims against Culpepper and Sandlin, in their respective official capacities, should be dismissed because those claims are redundant of plaintiff's claims against the City of Cullman and the City of Cullman Police Department.  Defendants are correct that official-capacity suits

"generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 (1978).  As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Brandon*[ *v. Holt*]*,* 469 U.S. [464], 471-472 [(1985)].

---

[24]Amended Complaint, at ¶ 26.

*Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985).

Plaintiffs also point out, however, that states and state officials may be sued by private individuals in actions seeking *prospective* injunctive relief for *continuing* violations of federal law.  *See Ex Parte Young,* 209 U.S. 123, 155-56 (1908).  While the Eleventh Circuit has not directly ruled on the issue, other Circuit Courts of Appeal have held that "federal ADA claims for prospective injunctive relief against state officials are authorized by the *Ex parte Young* doctrine."  *Koslow v. Commonwealth of Pennsylvania,* 302 F.3d 161, 179 (3rd Cir. 2002).  *See also id.* 178-79 ("Three other courts of appeals have allowed suits for purely injunctive relief under the ADA against state officials.  *See Carten v. Kent St. Univ.,* 282 F.3d 391, 396 (6th Cir. 2002) ("[A]n official who violates Title II of the ADA does not represent 'the state' for purposes of the Eleventh Amendment, yet he or she nevertheless may be held responsible in an official capacity for violating Title II [of the ADA], which by its terms applies only to 'public entit[ies].'"); *Gibson v. Ark. Dept. of Corr.,* 265 F.3d 718, 720 (8th Cir. 2001) ("The Eleventh Amendment is not a bar to federal jurisdiction over a suit against a state official when that suit seeks only prospective injunctive relief in order to end a continuing violation of federal law.") (quotations and citations omitted); *Roe No. 2 v. Ogden,* 253 F.3d 1225, 1233-34 (10th Cir. 2001).") (bracketed alterations in original).  Thus, "[w]hile there appears to be no

individual liability for damages under Title I of the ADA, *cf. EEOC v. AIC SEC. Investigations, Ltd.,* 55 F.3d 1276, 1280 n.4 (7th Cir. 1995), prospective relief against state officials acting in their official capacities may proceed under the statute." *Koslow,* 302 F.3d at 178.

This court is persuaded by the reasoning of the Third Circuit in *Koslow*, and concludes that plaintiff's claims against Culpepper and Sandlin, in their official capacities, for prospective injunctive relief, shall remain.  Based on these principles, plaintiff's claims for monetary damages against Culpepper and Sandlin in their official capacities will be dismissed as duplicative of plaintiff's claims against the City of Cullman and the City of Cullman Police Department.  Plaintiff's claims against Culpepper and Sandlin for prospective injunctive relief[25] will remain.

**E.     Individual Capacity Claims against Culpepper and Sandlin**

Defendants also argue that plaintiff's claims against Culpepper and Sandlin, in their respective *individual* capacities, should be dismissed because individual liability is precluded under both the ADA and the Rehabilitation Act.  It is true that "individual liability is precluded under § 12203 [governing ADA retaliation claims]

---

[25]Plaintiff seeks an injunction "[e]njoining and permanently restraining these violations of the Americans with Disability [sic] Act and the Rehabilitation Act," and an injunction "[d]irecting Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff's employment opportunities."  Amended Complaint, at 13-14 (Prayer for Relief), at ¶¶ B & C.

where the act or practice opposed by the plaintiff is made unlawful by *Subchapter I* [the employment provisions] of the ADA." *Albra v. Advan, Inc.,* 490 F.3d 826, 834 (11th Cir. 2007) (emphasis supplied).  On the other hand, "an individual may be sued privately in his or her personal capacity for violating § 12203 *in the public services context* [Subchapter II of the ADA]." *Shotz v. City of Plantation, Fla.,* 344 F.3d 1161, 1180 (11th Cir. 2003) (emphasis supplied).[26]

In the present case, plaintiff does not clearly state whether his retaliation claims are based upon his opposition to activity protected by Subchapter I or Subchapter II of the ADA.  It is clear from a reading of plaintiff's amended complaint, however, that he alleges retaliation as a result of his complaints of disability-based discrimination in his employment with defendants.  The Eleventh Circuit has held that "Title II [of the ADA] does state a cause of action for employment discrimination." *Bledsoe v. Palm Beach County Soil and Water Conservation Dist.,* 133 F.3d 816, 825 (11th Cir. 1998); *see also id.* at 820 ("Title II of the ADA does encompass public employment discrimination.").  It does not necessarily follow, however, that a claim

---

[26]Defendants cite *Rylee v. Chapman,* No. 2:06-CV-0158-RWS, 2008 WL 3538559 (N.D. Ga. Aug. 11, 2008), for the proposition that "Title II of the Disabilities Act provides a cause of action only against a 'public entity' and not an individual acting under color of state law." *Id.* at *6 (citing 42 U.S.C. § 12132; *Mason v. Stallings,* 832 F.3d 1007, 1009 (11th Cir. 2007)).  *Rylee,* however, addresses simple discrimination claims under the ADA, not retaliation claims. *See id.*  The Eleventh Circuit clearly has reached a contrary conclusion with regard to retaliation claims brought pursuant to the ADA.  *See Shotz,* 344 F.3d at 1180.

for employment discrimination against a public employer cannot *also* be brought under Subchapter I of the ADA, and this court can discern no basis under Eleventh Circuit authority for precluding such a claim under Subchapter I.

Thus, plaintiff's ADA retaliation claim could legitimately be construed as one based upon activity protected by *either* Subchapter I *or* Subchapter II of the ADA. To the extent the claim relates to activity protected by Subchapter I, plaintiff cannot pursue it against the individual defendants in their individual capacities, and it is due to be dismissed. *See Albra,* 490 F.3d at 834. To the extent the claim relates to activity protected by Subchapter II, it can proceed against the individual defendants in their individual capacities.

With regard to plaintiff's Rehabilitation Act claims against Culpepper and Sandlin, in their individual capacities, defendants' sole argument for dismissal is that "'individuals are not subject to suit under the Rehabilitation Act because they are not [federal] funding recipients.'"[27] *See Rylee v. Chapman,* No. 2:06-CV-0158-RWS, 2008 WL 3538559, *4 (N.D. Ga. Aug. 11, 2008) (citing *Lollar v. Baker,* 196 F.3d 603, 608-09 (5th Cir. 1999)). This court believes that principle should not be so broadly stated. In *Lollar,* the sole decision relied upon by *Rylee,* the Fifth Circuit merely held that, because *the particular individual defendant named in that case* was

---

[27]Doc. no. 27 (defendants' brief), at 6.

not a recipient of federal funding, she could not be held liable under the Rehabilitation Act. *Lollar,* 196 F.3d at 609. It did not hold that an individual defendant can never be considered a recipient of federal funds, thus rendering them liable under the Rehabilitation Act. Therefore, this court concludes that *Rylee* does not alter the general principle that a defendant (even an individual defendant) can be held liable under the Rehabilitation Act if he, she, or it is a recipient of federal funds for any program or activity from which the plaintiff is excluded. *See* 29 U.S.C. § 794(a); *Doyle,* 680 F.2d at 1326-27. As discussed in Section III(C), *supra,* plaintiff's complaint alleges that *all* defendants were recipients of federal funding. Thus, the allegations of the complaint are sufficient to support a claim for retaliation under the Rehabilitation Act against the individual defendants in their individual capacities. Those claims will not be dismissed at this stage of the litigation.[28]

## F.    Failure to Exhaust Administrative Remedies

Next, defendants argue that plaintiff's complaint should be dismissed in its entirety for failure to exhaust administrative remedies. The timely filing of an EEOC charge of discrimination within 180 days of the alleged discriminatory act is a

---

[28]In order to ultimately prevail on his Rehabilitation Act claim against the individual defendants in their individual capacities, plaintiff will of course have to produce evidence that the individual defendants themselves (as opposed to the City of Cullman or the City of Cullman Police Department) were recipients of federal funding for a program or activity from which plaintiff was excluded.

condition precedent to bringing suit under the ADA.  *See* 42 U.S.C. § 2000e-5(e)(1) (requiring claimant to submit a charge of discrimination to EEOC within 180 days "after the alleged unlawful employment practice occurred"); 42 U.S.C. § 12117(a) (providing, among other things, that the "procedures set forth in section[] . . . 2000e-5 . . . of this title shall be the . . . procedures this subchapter provides to . . . any person alleging discrimination on the basis of disability"); *see also, e.g., Maynard v. Pneumatic Products Corp.*, 256 F.3d 1259, 1262 (11th Cir. 2001) (per curiam) ("An ADA plaintiff has the burden of proving all conditions precedent to filing suit, including the condition that he timely filed with the EEOC.") (citation omitted); *Zillyette v. Capital One Financial Corp.*, 179 F.3d 1337, 1339 (11th Cir. 1999) ("It is settled law that, under the ADA, plaintiffs must comply with the same procedural requirements to sue as exist under Title VII of the Civil Rights Act of 1964.").

"[A] 'plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Gregory v. Georgia Dept. of Human Resources,* 355 F.3d 1277, 1280 (quoting *Alexander v. Fulton County,* 207 F.3d 1303, 1332 (11th Cir. 2000), and citing *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 460 (5th Cir. 1970)).  The proper inquiry is whether plaintiff's complaint "was like or related to, or grew out of, the allegations contained in her EEOC charge."  *Gregory,* 355 F.3d at 1280.

-18-

In this case, defendants argue that "Plaintiff's Complaint contains issues not raised in his EEOC charges," and that, as a result, *all* of plaintiff's claims should be dismissed.[29]  As an initial matter, defendants are incorrect that the remedy for a complaint whose scope exceeds that of the underlying EEOC charge is complete dismissal of the complaint.  Instead, as stated above, the proper remedy is simply to limit the allegations of plaintiff's complaint to the scope of those asserted in his EEOC charge.

Furthermore, the court concludes that the allegations of plaintiff's complaint *are* like or related to, or grow out of, the allegations in his EEOC charges.  Plaintiff has filed four charges of discrimination with the EEOC.  First, on March 18, 2008, he filed Charge No. 420-2008-01800, stating:

> Officer Scott Pattillo suffers from medical conditions known as pseudofolliculitis barbae and angular cheilitis.  The conditions make it impossible for Officer Pattillo to be clean shaven on his face.  As a result of his medical condition Pattillo is being denied promotional advancements and Officer Pattillo in a meeting with Police Chief Kenny Culpepper and Assistance [sic] Chief Gordon Sandlin stated that he will **<u>never</u>** be promoted.
>
> My ability to perform my job is in no way hindered, interfered with or do I have any inability to perform any of the essential functions of my job due to my medical condition by the fact that I wear a closely groomed beard.  Only the City of Cullman Police Department has taken that stance and as a result it was made verbally clear that I would never be promoted as long as I work for the City of Cullman Police

---

[29]Doc. no. 27, at 7.

Department.

> I believe that I am being discriminated against due to my medical disability and being retaliated against because I brought to their attention my complaint of said discrimination by now being told I will never be promoted, in violation of Title VII of the Civil Rights Act of 1964, as amended and the Americans with Disability Act [sic].[30]

Plaintiff filed a second EEOC charge (No. 420-2008-02151) on April 22, 2008, stating:

> The employers, City of Cullman and City of Cullman Police Department, have retaliated against Scott Pattillo as punishment for Scott Pattillo filing his notice of claim for employment discrimination against the City of Cullman and City of Cullman Police Department received respectfully on February 7, 2008 and February 6, 2008 by the employers.  The employers by the notice of claims and a letter to their legal counsel of employment discrimination and retaliation were placed on notice that Scott Pattillo was claiming charges of discrimination with the United States Equal Employment Opportunity Commission see attached to letter to Legal Counsel for employers. [sic]  First notice of claim was filed with the EEOC under Charge Number 420-2008-01800.[31]

Plaintiff's third EEOC charge (No. 420-2009-00850) was filed on January 6, 2009, and stated:

> Pattillo has experienced continuing retaliation due to his filing of a complaint of discrimination.  As of this filing Pattillo has also filed a federal lawsuit under case number CV-08-S-2147, Northeastern Division.  Pattillo's employer since the filing of the EEOC charges 420-2008-01800 and 420-2008-02151 continues to take adverse employment

---

[30]Amended Complaint, at Exhibit A (EEOC Charge No. 420-2008-01800) (emphasis in original).

[31]*Id.* at Exhibit A1 (EEOC Charge No. 420-2008-02151).

actions against Pattillo to include reducing his job duties and authority placing Pattillo in a dead end position with no foreseeable opportunity for advancement, taking away benefits, loss of use of vehicle, loss of office, being written up and given conditions of employment not imposed on other police officers.

Officer Pattillo has been an Officer with the City of Cullman for 7 ½ years and on January 2008 [sic] was named Officer of the Year. Until his filing of his EEOC complaints Pattillo has never received a disciplinary write up now he has been written up four times since his EEOC charges and his latest write up has occurred on January 6, 2009.[32]

Plaintiff's fourth charge, No. 420-2009-01064, was filed on January 29, 2009.

It stated:

On January 8, 2009, the newest EEOC complaint for retaliation was filed under Charge # 420-2009-00859. On January 28, 2009, Officer Pattillo has again been singled out by Captain Max Bartlett, Investigation Division Supervisor with the Cullman City Police Department and ordered Officer Scott Pattillo to appear before him and stand for photographs taken of Officer Pattillo of multiple views of him in uniform. The City Police Department has now begun investigation on Officer Pattillo for improper unapproved uniforms. Officer Pattillo has been wearing the same approved uniform and type and color of uniform for the past seven (7) years while on duty, under the same administration and Chief of Police. To our knowledge no other officer has undergone this treatment and singled out, the way that Officer Pattillo has been.

Additionally, on January 28, 2009, Officer Pattillo was informed by Captain Max Bartlett that the City of Police Chief Culpepper has requested that he sit for a polygraph test, again singling out Officer Pattillo and treating him in a manner dissimilar to that of other officers. We contend the City Police Department Police Chief Culpepper and Detective Bartlett have retaliated against Officer Pattillo for his past

---

[32]*Id.* at Exhibit A2 (EEOC Charge No. 420-2009-00850).

EEOC filings, his present Federal lawsuit in such a manner that it is becoming impossible for Officer Pattillo to perform his duties.[33]

These charges state that plaintiff was retaliated against because of his complaints of disability discrimination. The alleged retaliation included the alteration of plaintiff's job duties in such a way that would prevent his future advancement within the Police Department, receipt of disproportionate discipline, and loss of benefits. Similarly, in his Amended Complaint, plaintiff alleged that he had been monitored more closely and disciplined more severely than individuals who had not complained of discrimination, and that he was denied promotions, other opportunities for advancement, and benefits. These allegations are not just "like or related to" the allegations of plaintiff's EEOC charges; they are almost *identical* to the allegations asserted in the charges. Accordingly, plaintiff's Amended Complaint will not be dismissed for failure to exhaust administrative remedies.[34]

## G.   Punitive Damages

Finally, defendants argue that plaintiff's claim for punitive damages must be dismissed. Plaintiff concedes this argument in his brief.[35] Accordingly, plaintiff's

---

[33]*Id.* at Exhibit A3 (EEOC Charge No. 420-2009-01064).

[34]This holding applies equally to plaintiff's claim for retaliation under the Rehabilitation Act. There is no exhaustion requirement for claims against non-federal defendants under the Rehabilitation Act. *See Doe v. Garrett,* 903 F.2d 1455, 1460 (11th Cir. 1990).

[35]Doc. no. 29 (plaintiff's brief), at 18 ("Plaintiff concedes that a government is immune from punitive damages.").

claims for punitive damages are due to be dismissed.

## IV. CONCLUSION

Based on the foregoing, defendants' motion to dismiss plaintiff's amended complaint is due to be granted in part and denied in part.  Plaintiff's claims for monetary damages against defendants Kenny Culpepper and Gordon Sandlin, in their official capacities, are due to be dismissed.  Any ADA retaliation claims against Culpepper and Sandlin, in their individual capacities, based upon plaintiff's engagement in activity protected by Subchapter I of the ADA, are due to be dismissed.  Finally, all claims for punitive damages are due to be dismissed.  All other claims, and aspects of claims, shall remain.   An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 14th day of May, 2009.

_____
United States District Judge